# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

TERRY DORA                                                          PETITIONER

V.                                              CIVIL ACTION NO.1:08CV170-SA-JAD

MDOC, et al.                                                      RESPONDENT

## <u>MEMORANDUM OPINION</u>

This cause comes before the court on the petition of Terry Dora, inmate number R2153, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After due consideration, the court finds that petition should be denied.

### *A. Factual and Procedural Background*

On August 3, 2001, the Columbus Police Department entered the home of Rebecca Dora, Terry Dora's aunt. The police had obtained a warrant based on their suspicion that drugs were being sold in the home. When police entered the home, Rebecca, the owner, and Alicia, her seventeen year-old daughter were found in the living room. According to testimony elicited at trial, Terry Dora, the petitioner, was seen exiting the bathroom near the back of the house. Terry was ordered to the ground. In the bathroom, officers found 35.6 grams of crack cocaine in a plastic bag underneath tissue in the garage can. Officers also found $1,050 in cash hidden in the bathroom underneath towels on a shelf. A plastic bag containing coffee grounds was found in Terry's pocket. A set of digital scales was on a table in the kitchen just a few feet from the bathroom. More drugs and $2,500 in cash were found in Rebecca's room. Crime lab reports, indicated a "dramatic difference in coloration" between the crack cocaine found in the bathroom and that found in Rebecca's bedroom.

Terry, Rebecca and Alicia were arrested for possession. The charges against Alicia were

dropped.  Rebecca originally claimed exclusive ownership of the drugs.  At trial, however, she recanted her previous statements and explained that Terry had offered her $5,000 to "take the rap" for the drugs.  Rebecca's testimony was corroborated by Alicia who stated Terry made the $5,000 offer to her mother while all three of them were being held in the police car.  Rebecca also testified that she did not know anything about the cash in the bathroom and that the $2,500 found in her room belonged to Terry.  She did, however, admit that the drugs found in her room were hers.  When Rebecca was asked to describe the drugs found, she was unable to identify the drugs retrieved from the bathroom.

Terry Dora was indicted for possession of more than thirty grams of cocaine.  He was found guilty by a jury of his peers of possession in the Circuit Court of Lowndes County, Mississippi.  He was sentenced to sixty years in the custody of the Mississippi Department of Corrections as an habitual offender without the possibility of parole or probation.  On direct appeal the Mississippi Court of Appeals held the conviction should be reversed and remanded due to trial court's refusal to grant a mistrial after the prosecution commented on the defendant's decision not to testify.  The Appellate Court also instructed the trial court to hold a speedy trial hearing on remand.  The State petitioned for writ of certiorari to the Mississippi Supreme Court raising the failure-to-testify argument and speedy trial issues.  The Mississippi Supreme Court reversed the Court of Appeals' decision and reinstated the conviction and sentence.  Dora has filed a petition for writ of habeas corpus in this court raising thirteen grounds for relief.

### B.  Limitations on Review

Consideration of a federal petition for habeas corpus is a two-tiered procedure.  Before considering the merits of any claim the court must first determine if all procedural steps necessary to preserve each issue raised for federal review have been taken.  First, the petition

must be timely filed. Secondly, each claim in the petition must have been exhausted. 28 U.S.C. § 2254(b)(1). A claim is deemed exhausted if it has been presented to the highest court in the state, here the Mississippi Supreme Court, either on direct appeal or by post-conviction proceedings. If the claim is exhausted the court generally proceeds to the merits. If the claim is not exhausted and state post-conviction relief is no longer available, the claim will be finally dismissed. *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).

Petitioners must also meet state procedural requirements in the state court proceedings. If the state court, pursuant to its regularly enforced rules and procedures, refuses to consider an issue on the merits because of a procedural violation, the federal courts will almost never consider the procedurally defaulted claim. *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001). To avoid the bar of a procedural default, the petitioner must show "cause and prejudice" or a "fundamental miscarriage of justice" will result if the court refuses to entertain the petition. *Moawad v. Anderson*, 143 F.3d 942, 947 (5th Cir. 1998). If all the procedures have been followed in state court, the federal courts will then address issues affecting substantial federal constitutional rights.

The federal courts do not function as super appellate courts over the states and hold no supervisory authority over those courts. The federal courts may not correct errors of state law unless they also violate the constitutional rights of an accused. *Smith v. Phillips*, 455 U.S. 209, 221, 102 S. Ct. 940, 948, 71 L. Ed. 2d 78 (1981); *Engle v. Isaac*, 456 U.S. 107, 121, n.21, 102 S. Ct. 1558, n.21, 71 L. Ed. 2d 783 (1982).

Even in matters affecting fundamental constitutional rights the federal courts have a very limited scope of review. Title 28 U.S.C. § 2254(d) provides:

(D) An application for writ of habeas corpus on behalf of a person in

custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

The federal courts may not disturb the legal holdings of the state courts even if convinced they are erroneous. The federal courts may intervene only if the application of federal law is also objectively unreasonable. *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The statute presumes each factual finding by the state court is correct. These findings can be disturbed only if the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## C. Discussion

### Ground One: the Verdict is Against the Overwhelming Weight of Evidence

In support of Ground One, Dora argues that the verdict is not supported by the evidence. He specifically points to the fact that he did not own the home where he and the drugs were found but, rather, he was merely a visitor. Furthermore, Dora states that drugs where not on his person at the moment he was arrested. Dora explains that the home was owned by Rebecca Dora and that Rebecca admitted she possessed some of the drugs and admitted that she had sold drugs for her boyfriend. Terry Dora also submits that Tommy Dora admitted he purchased drugs from Rebecca.

This court may examine the legal sufficiency of the evidence to support the verdict of guilty, though not the question of whether the verdict was against the overwhelming weight of the evidence. *Young v. Kemp*, 760 F.2d. 1097, 1105 (5th Cir. 1985). His claim as stated is not

cognizable in a federal habeas action.

Liberally construing the claim to be a challenge to the sufficiency of the evidence, the claim still fails. When faced with an insufficiency of evidence claim, a federal court on habeas review must remember both its limitation, *i.e.*, it may not "make its own subjective determination of guilt or innocence," *Jackson v. Virginia*, 443 U.S. 307, 319 n.13, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), and its function. "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. The court is not at liberty to substitute its conclusions for those of the jury.

Applying that standard, the court finds, as briefly summarized below, the record contains sufficient inculpatory evidence from which a rational trier of fact could have found Dora guilty. Dora was present in his aunt Rebecca's home when police arrived to execute a search warrant. Dora was stopped by a police officer exiting the bathroom. Cocaine and cash were found hidden in that bathroom. Digital scales were located in the kitchen just a few feet from Dora. A bag of coffee grounds was found on Dora's person. Both his aunt, Rebecca and her daughter, Alicia testified that Dora offered Rebecca five thousand dollars to take the rap for him. Rebecca testified that she possessed marijuana and cocaine found in her bedroom, but that the cash found in the bathroom and in her bedroom belonged to Dora. Her daughter testified that to her knowledge there were no drugs in the bathroom before the Petitioner went into the bathroom. She testified that the cocaine found in the bathroom belonged to Dora. Rebecca initially made statements to police officers taking the blame for all the drugs found, but testified at trial that Dora's offer motivated her to lie to the police initially. She was, however, unable to describe the crack cocaine found in the bathroom, which differed in appearance from that found in her

bedroom.  Nor could she tell police how much cash was in the bathroom, though she knew how much was in her bedroom.  Accepting the proof favorable to the state, this was more than sufficient to convict Dora of possessing the drugs found in the bathroom.  Accordingly, Ground One has no merit.

Ground Two: Prosecutorial Misconduct

In Ground Two, Dora argues that the trial court should have granted a mistrial after the prosecutor made inappropriate comments on his failure to testify.  During closing arguments, the prosecutor three times characterized evidence as undisputed.  The prosecutor also commented:

> You also heard the fact that it is undisputed, ladies and gentlemen, that this defendant told Rebecca Dora, I will give you $5,000; I'm sorry I got you into this trouble, but I will give you $5,000 to go in there and take the rap for me.  That is also undisputed.  Nobody came forward and said that didn't happen.  I submit to you, ladies and gentlemen, that that is strong evidence . . .

Defense counsel objected to the comments and moved for a mistrial.  The court overruled the objection and denied the motion for a mistrial.

Dora contends that these comments violated his right against self-incrimination secured to him by the Fifth Amendment.  The Mississippi State Court of Appeals agreed and reversed the trial court.  The Mississippi State Supreme Court reversed and reinstated the conviction.

*a.  The Privilege against Self-Incrimination*

The Fifth Amendment's privilege against self-incrimination forbids direct or indirect comment by the prosecution on the accused's silence.  *Griffin v. State of California*, 380 U.S. 609, 614, 85 S. Ct.. 1229, 1233, 14 L. Ed. 2d 106 (1965).  Any suggestion by the prosecution to the jury that it may treat the defendant's silence as substantive evidence of guilt is prohibited.  *United States v. Robinson*, 485 U.S. 25, 32 108 S. Ct. 864, 869, 99 L. Ed. 2d 23 (1988).  The

prosecution is not prohibited, however, from commenting on the defense's failure to counter or explain the evidence as opposed to the defendant's failure to testify. *United States v. Grosz*, 76 F.3d 1318, 1326 (5th Cir. 1996). Prosecutorial comments must be examined in context. *Lockett v. Ohio*, 438 U.S. 586, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978).

To determine whether the Fifth Amendment protections have been violated, the court must determine "(1) whether the prosecutor's manifest intent was to comment on the defendant's silence or (2) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence." *Grosz*, 76 F.3d at 1326. The prosecutor's comment may not manifest intent to comment on the accused's silence if there is some other plausible explanation for the remark. *See Robinson*, 485 U.S. at 32-33 (prosecutor's comments were made to rebut defense remarks that the defendant was not given a fair opportunity to explain). Comments made by the prosecution in "fair response to a claim made by defendant or his counsel" does not violate the Fifth Amendment. *Id.*

An additional consideration with respect to the evaluation of alleged prosecutorial misconduct is the Supreme Court's instruction that "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S. Ct. 1868, 1873-74, 40 L. Ed. 2d 431 (1974).

Even finding that a comment is impermissible does not automatically warrant reversal. Reversal, rather, is not required unless the improper comment had a clear effect on the jury. *United States v. McMillan*, 600 F.3d 434, 452 (5th Cir. 2010) (finding the comment was isolated and not intended to focus the jury on the defendant's failure to testify). The standard for

determining whether relief must be granted is whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S. Ct. 1710, 1714, 123 L. Ed. 2d 353 (1993) (citations omitted). Whether the error requires reversal depends upon the magnitude of the prejudicial effect, the efficacy of any cautionary instruction and the strength of the evidence of the defendant's guilt. *United States v. Davis*, 609 F.3d 663, 682 (5th Cir. 2010) (citations omitted). Improper prosecutorial comments are constitutionally unfair only if they are persistent and pronounced, or if the evidence is so weak that no conviction would have occurred but for the remarks. *Woodfox v. Cain*, 609 F.3d 774, 806 (5th Cir. 2010). A constitutional error can be harmless but the court must be able to declare that the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

*b. Relevant United States Supreme Court Decisions*

In *Griffin v. State of California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965), the United States Supreme Court examined for the first time whether a prosecutor's comment on the accused's failure to testify violated the Fifth Amendment's self-incrimination clause. The Court reviewed California's law which allowed prosecutors to comment on a defendant's failure to testify. Taking issue with that State's practice, the Court noted:

> It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly. It is said, however, that the inference of guilty for failure to testify as to facts peculiarly within the accused's knowledge is in any event natural and irresistible, and that comment on the failure does not magnify that inference into a penalty for asserting a constitutional privilege. What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another.

*Id.* at 614. The Court ultimately held that the Fifth Amendment prohibits prosecutorial

comments on the accused's silence or failure to testify and that a defendant's silence may not be used as substantive evidence of guilt. *Id.* at 615.

The Court revisited the issue in *United States v. Robinson,* 485 U.S. 25, 108 S. Ct. 864, 99 L. Ed. 2d 23 (1987). During the *Robinson* trial, the defense argued that the Government did not allow the defendant to explain his side of the story. At closing argument, the prosecutor told the jury that the defendant "could have taken the stand and explained" his version of events. Although no objection was made, the court gave a cautionary instruction informing the jury that "no inference whatever may be drawn from the election of a defendant not to testify."

The Supreme Court grant certiorari. The Court noted, "Under *Griffin* . . . it is improper for either the court or the prosecutor to ask the jury to draw an adverse inference from a defendant's silence. But I do not believe that the protective shield of the Fifth Amendment should be converted into a sword that cuts back on the area of legitimate comment by the prosecutor on the weakness in the defense case." *Id.* at 32 (citing Stevens, J. concurring in *Griffin*). Construing *Griffin* narrowly, the Court held that the prosecutor's comments were a fair response to the defendant's argument. Thus, the comments in *Robinson* were deemed proper under the circumstances.

### c. *Direct Review of Dora's Conviction by State Courts*

As noted above the Mississippi Court of Appeals and the State Supreme Court reached opposite results regarding the Fifth Amendment issue arising out of prosecutorial comments about Dora's decision not to testify. Although this court is to review the State Supreme Court's decision, some discussion of the appellate court's opinion will also be helpful.

The Mississippi Court of Appeals reviewed five issues raised by Dora on appeal. The Court found that the comment on Dora's failure-to-testify warranted reversal. The appellate

court found the prosecutor made impermissible comments during his closing arguments when he said:

> You also heard the fact that it is undisputed, ladies and gentlemen, that this defendant told Rebecca Dora, I will give you $5,000; I'm sorry I got you into this trouble, but I will give you $5,000 to go in there and take the rap for me. That is also undisputed. Nobody came forward and said that didn't happen. I submit to you, Ladies and Gentlemen that that is strong evidence . . .

*Dora v. State*, 986 So. 2d 965, 970 (Miss. App. 2007). Defense counsel immediately objected to the comment and moved for a mistrial. *Id.* at 970. The motion was overruled. The Court of Appeals also identified two other potentially impermissible comments made by the prosecutor when he referred to evidence as "undisputed." *Id.*

Relying on *Whigham v. State*, 611 So. 2d 988, 995 (1992), which held that it is reversible error for the prosecutor to say that the state's witnesses were unopposed and unrebutted where the only one who could have rebutted the witness's testimony was the defendant, the Court explained that only Dora could have refuted Rebecca and Alicia's testimony regarding the $5,000 offer. *See, also Livingston v. State*, 525 So. 2d 1300, 1307 (Miss. 1988), *overruled* by *Wright v. State*, 958 So. 2d 158, 161 (Miss. 2007). As a result, the court found that the references to the bribe as undisputed and the comment that no one came forward and "said that didn't happen," were impermissible comments on Dora's decision not to testify. The Court reversed Dora's conviction and remanded for a new trial. *Dora*, 986 So. 2d at 969.

Following the Court of Appeals' decision, the State petitioned for a writ of certiorari, which was granted by the Mississippi Supreme Court. While Dora's motion for rehearing was pending, the State Supreme Court handed down *Wright v. State*, 958 So. 2d 158, 161 (Miss. 2007) which curtailed the holdings of *Livingston* and it's progeny including *Whigham* because

these cases failed to acknowledge the United States Supreme Court holding of *United States v. Robinson*, 485 U.S. 25, 108 S. Ct.. 864, 99 L. Ed. 2d 23 (1988).

Mississippi's highest court clarified its precedent and explained, "what is prohibited [by the Fifth Amendment] is any reference to the defendant's failure to testify implying that such failure is improper, or that it indicates the defendant's guilt." *Dora v. State*, 986 So. 2d 917, 923 (Miss. 2008) (citing *Wright*, 958 So. 2d at 161). The Court recognized the distinction, laid out in *Robinson*, between a comment on the defendant's failure to testify and a comment on the defendant's failure to put on a successful defense–the latter being permissible. In Dora's case, the Court found that the prosecutor's comments were permissible statements regarding the absence of evidence to support the defense. The State Supreme Court held that "at most, the prosecutor was fairly responding to an argument of the defendant by averting" his silence.[1] The Court, therefore, held that the trial court's refusal to grant the motion for mistrial was not an abuse of discretion but, rather, was consistent with the standards announced in *Robinson* and *Wright*. Dora's conviction was reinstated.

### d. Were the Prosecutor's Comments Improper?

This court is mindful of its duty–that is, to review the State Supreme Court's decision for reasonableness. *See* 28 U.S.C. § 2254(d). In order to determine whether that decision was a reasonable application of clearly established federal law, it is necessary to begin with a review of the disputed comments.

There are several places in the record where the prosecutor refers to evidence as

---

[1] Referring to the defense's closing argument, the Court identified Dora's theory of the case as an attempt to blame Rebecca and Alicia for possessing the drugs. The defense contended that both Rebecca and Alicia were only testifying against Dora to save themselves and avoid the prospect of being incarcerated.

undisputed. The most egregious comment, which has been quoted in full *supra*, referred to the $5,000 offer Dora made to Rebecca if she would take responsibility for the drugs. The prosecutor remarked that "nobody came forward to say that didn't happen." Arguably, the only person who would have come forward to dispute the existence of that offer would be Terry Dora. Relying on this logic, the State Court of Appeals held that the comment was improper and, without further consideration of whether the remark created any prejudice, the court reversed Dora's conviction and remanded for a new trial. The State Supreme Court reinstated the conviction and recognizing the holding in *United States v. Robinson* that not every prosecutorial comment about "undisputed evidence" is impermissible and not every impermissible comment requires reversal. The State's high court found that the prosecutor's remarks were a fair response to the defense's theory of the case and were, thus, permissible.

This case well represents the difficulty in trying to determine which comments warrant reversal and which comments, while constitutionally unacceptable under the Fifth Amendment, do not require a conviction to be overturned. This court agrees with the Mississippi Court of Appeals conclusion that the comments were not permissible. The court, however, disagrees that the comments justified reversal. Conversely, this court disagrees with the Mississippi Supreme Court's finding that the comments were a fair response to the defense's argument. But, the court agrees with the ultimate conclusion that the remarks did not result in any prejudice that would warrant disturbing the conviction.

The prosecutor's comment that "nobody came forward to say that didn't happen," by itself, is flatly prohibited by the Fifth Amendment as interpreted by *Griffin*.[2] Under *Robinson*,

---

[2] It is this particular comment which is most troubling under the Fifth Amendment. Thus, the court will focus the analysis on this comment only. The other parts of the record

however, this strict prohibition was slightly diminished to make room for prosecutorial comments that are a fair comment on the absence of evidence or on the defense. Despite the Mississippi State Court's conclusion, this court is not entirely convinced that the statement was a fair rebuttal to the defense's theory of the case. Even when taken in context, there seems to be almost no other reason for the comment other than to call attention to the fact that Dora did not testify.

Finding the comment was improper, however, does not end the inquiry. It is entirely possible for a conviction to survive constitutionally impermissible remarks. *Chapman*, 386 U.S at 18. Reversal is not required unless the comments had a "substantial and injurious effect or influence on the jury's verdict." *Brecht*, 507 U.S. at 623. This is the point at which reasonableness and the Mississippi Supreme Court's decision intersect.

At trial Officer Oscar Lewis testified about his involvement executing the search warrant in Rebecca Dora's home. Lewis stated that he saw Terry Dora exiting the bathroom. (S.C.R. vol. 4, pp. 202:3; 206:7-27; 219:26-29.). The jury also heard from Officer Larry Taylor. Taylor led the investigation which resulted in the execution of the search warrant at Rebecca Dora's house. Taylor explained that Terry Dora had been the primary focus of a drug dealing investigation. (S.C.R. vol. 4, p. 224:9-28) Taylor also corroborated Lewis' testimony regarding Dora's location and proximity to the bathroom. (S.C.R. vol. 4, p. 226:25-28). Officer Taylor

---

where the term "undisputed" was used were clearly not improper comments. *United States v. Jefferson*, 258 F.3d 405, 414 (5th Cir. 2001) (commenting on the absence of evidence in the record does not constitute a comment on the defendant's failure to testify); *United States v. El-Zoubi*, 993 F.2d 442, 447 (5th Cir. 1993) (prosecution may point out that testimony of witnesses is uncontradicted); *United States v. Valdez*, 861 F.2d 427, 434 (5th Cir. 1988) (same); *United States v. Guzman*, 781 F.2d 428, 432 (5th Cir. 1986) (the government may comment on the failure of the defense, as opposed to the defendant, to counter or explain the evidence).

further explained that when executing a search warrant in a house for drugs, it is important to find the bathroom immediately to prevent any suspect from flushing drugs in the toilet. (S.C.R. vol. 4, p. 228:4-15).

Rebecca Dora testified. She told the jury that $2,500 that was found in her bedroom belonged to Terry Dora. (Vol. 4 at p.273-74). Rebecca claimed that she was not aware of any money or drugs in the bathroom. (Vol. 4 at p. 275). She also stated that no one other than Terry Dora had been in the bathroom. (Vol. 4 at p. 277). Rebecca said that once she, Terry, and Alicia had been placed in the police car, Terry apologized for "this mess" and offered her $5,000 if she, Rebecca, would "take the rap" for the drugs. (Vol. 4 at p. 279:10-29). All of this testimony was corroborated by Alicia, Rebecca's daughter and Terry Dora's niece. (Vol. 5 pp. 301-305).

In addition, Rebecca admitted the drugs found in her bedroom belonged to her and she was able to describe them. Rebecca, however, was not able to describe the drugs found in the bathroom. Nor was she able to tell police how much money was found in the bathroom while she new exactly how much money was in her bedroom. All of this supports the theory that Rebecca was not aware of the drugs or money which were found in the bathroom–the same bathroom Dora was seen exiting by officer Taylor.

Notwithstanding the inappropriate comment on Dora's decision not to testify, there was more than sufficient evidence and testimony to conclude that Terry Dora possessed the drugs that were found in Rebecca's bathroom. Stated differently, it is extremely likely that Dora would have been convicted even without the prosecutor's remark. In addition, although there was no cautionary instruction given to the jury, this one isolated comment in a two day trial did not render the conviction constitutionally unfair. *Woodfox*, 609 F.3d at 806. It is not at all clear or likely that this single comment had any effect on the jury and its verdict. As a result, the court

finds that the comment, while impermissible, did not have a substantial or any injurious effect on the verdict. The comment was harmless given the strength of the evidence against Dora. *See Barrientes v. Johnson*, 221 F.3d 741, (5th Cir. 2000) (denying a certificate of appealability on the issue of an improper comment and recognizing that the comment could be impermissible but harmless); *Nethery v. Collins*, 993 F.2d 1154, 1159 (5th Cir. 1993) (holding overwhelming evidence of guilt and presence of curative instruction rendered harmless an impermissible comment by the prosecutor).

Although for different reasons, the court finds that Mississippi State Supreme Court's decision to reinstate the conviction was not an unreasonable application of clearly established federal law. Thus, Ground Two is denied.

Ground Three: Ineffective Assistance of Counsel

Dora makes multiple claims of ineffective assistance of counsel in his third ground for relief.[3]

To establish ineffective assistance of counsel the petitioner must show, (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Pitts v. Anderson*, 122 F.3d 275 (5th Cir. 1997). The petitioner must show that counsel's representation "fell below the objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88.

The deficiency determination is not unguided. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that, under the circumstances,

---

[3] One of these claims, that counsel was ineffective in failing to challenge the legality of Dora's arrest was withdrawn by the petitioner because it was not exhausted in state court.

the challenged action "might be considered sound trial strategy." *Id.* at 689 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S. Ct. 158, 100 L. Ed. 83 (1955)). The court is not to analyze counsel's actions in hindsight, but rather to judge his or her decisions in a highly deferential manner. *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (citing *Strickland*, 466 U.S. at 689).

If counsel's performance is deemed "to have been deficient, then [the court] must determine whether there exists a reasonable probability that but for the complained-of error the outcome of the trial or appeal would have been different." *Sharp v. Johnson*, 107 F.3d 282, 286, n.9 (5th Cir. 1997). A reasonable probability is one sufficient to undermine confidence in the outcome of the proceeding. *Moawad v. Anderson,* 143 F.3d 942, 946 (5th Cir. 1998). In order to make the required showing on the prejudice prong of *Strickland*, a petitioner must not just allege, but must actually prove prejudice. *Bonvillain v. Blackburn*, 780 F.2d. 1248, 1253 (5th Cir. 1986).

In the first subpart, Dora faults his attorney for failing to assert his speedy trial rights. The right to a speedy trial is guaranteed by the Sixth Amendment and applies to state criminal proceedings through the Fourteenth Amendment. *Goodrum v. Quarterman*, 547 F.3d 249, 257 (5th Cir. 2008). A violation of the right to a speedy trial requires dismissal of the indictment. *Id.* (citing *Strunk v. United States*, 412 U.S. 434, 439-40, 93 S. Ct. 2260, 2263, 37 L. Ed. 2d 56 (1973)). When evaluating a speedy trial claim, the court should consider (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192, 33 L. Ed. 2d 101 (1972). No one factor is necessary or sufficient to find a speedy trial violation. *Goodrum*, 547 F.3d at 257.

Dora's trial was originally set for August 22, 2002. The trial did not begin until November 9, 2004. During the more than two year delay, Dora's attorney did not press a speedy trial claim. It appears, however, that not pursuing a speedy trial was part of his attorney's overall trial strategy. As noted by the Mississippi Supreme Court, Dora's counsel filed numerous pretrial motions including a motion to quash the indictment, four motions in limine, a motion to suppress evidence, and a motion to suppress the search warrant along with a supporting memorandum. There were also nine agreed orders of continuances entered. While the length of delay is not insubstantial, the reasons for the delay are evident and reasonable. In addition, Dora suffered no prejudice from the delay. His ineffective assistance claim based on the absence of a speedy trial is, thus, refuted by the record.

Next, Dora faults his attorney for failing to "bring out the fact that the state's witness Rebecca Dora had been threatened and coerced" by the state into recanting her initial claims wherein she admitted ownership of all the drugs found at her house. Once again, Dora's claim is unsupported by the record. Under cross examination by defense counsel, Rebecca Dora admitted that she cooperated with the police in the hope of receiving leniency on her drug possession charge. There is little more that defense counsel could have done to demonstrate an ulterior motive for Rebecca's testimony and challenge her credibility as a witness.

Dora complains that his attorney failed to challenge the purportedly defective indictment. This claim too is contradicted by the record. Trial counsel did, in fact, file a motion to quash the indictment. Moreover, Dora does not discuss or demonstrate how the indictment is defective.

Dora concludes this ground with the complaint that his attorney did not request that "the

defective search warrant and affidavits" be entered into evidence.[4] The argument is completely unfounded. Both the search warrant and supporting affidavits were entered into evidence at a separate suppression hearing. Dora's motion to suppress was ultimately denied. There was, however, no logical reason to introduce the warrant and affidavits to the jury. Indeed, the validity of the warrant is purely a question of law. *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 256 (5th Cir. 2005).

With each of his ineffective assistance of counsel claims, Dora has failed to show that his attorney's performance was deficient. His conclusory allegations of ineffective assistance are insufficient to warrant habeas relief. The State Court's determination that Dora failed to meet the *Strickland* standard was entirely reasonable.

Ground Four: Defective Indictment

Dora contends that the indictment should have been quashed because it was fatally defective in charging him with possession when the evidence showed that the house he was arrested in belonged to Rebecca Dora and one of the arresting officers testified that Dora did not have drugs on his person at the time he was arrested. He says the indictment contained the false swearing of the officer's because without dispute he had no drugs on his person at the time of his arrest. This is essentially another challenge to the sufficiency of the evidence which the court has twice denied.

Furthermore, Dora fails to comprehend the concept of constructive possession. *See Hudson v. State*, 30 So.3d 1199, 1203-04 (Miss. 2010). There is no flaw in the indictment or

---

[4] Dora also claims that his lawyer should have objected to the "undisclosed" testimony of Rebecca Dora. The petitioner, however, fails to provide any meaningful elaboration to assist the court with a discussion of this claim. It is, therefore, summarily rejected.

conviction because he was not caught with drugs on his person. The evidence fully supports the jury's conclusion that he was in constructive possession of the drugs.

Ground Five: Speedy Trial

In his fifth ground Dora contends that his speedy trial rights were violated. More than three years passed between the time of his arrest and his trial. Dora claims that he was prejudiced in two ways by this delay. First, he asserts that he could not have been sentenced as an habitual offender if timely tried. Secondly, he asserts that Rebecca Dora would not have testified adversely to him, but would have claimed ownership of the drugs if he had been timely brought to trial.

The speedy trial issue was also addressed as an ineffective assistance of counsel claim and was found to be without merit. The additional assertions of prejudice do not bolster his claims. A witness's change in testimony alone is insufficient to constitute prejudice particularly where there is ample opportunity for cross-examination to highlight any changes. *See United States v. Frye*, 489 F.3d 201, 213 (5th Cir. 2007). The court can find no factual or legal support for the habitual offender argument.

The Mississippi Supreme Court's rejection of the speedy trial claim was not an unreasonable application of federal law. Ground five is, therefore, denied.

Grounds Six, Eleven and Thirteen: Jury Instructions

In these grounds Dora challenges the granting of one of the state's jury instruction and the trial court's refusal to grant three defense instructions. Dora claims that the State's instruction S-4 misstated the law of possession. He argues that the instruction did not require the jury to find whether he was "aware of the character of the substance, i.e. that was cocaine."

The State's possession instruction read:

The court instructs the Jury that to constitute possession, there must be sufficient facts to warrant a finding that the Defendant was aware of the presence of the particular item, and was intentionally and consciously in possession of it. It need not be actual, physical possession; constructive possession may be shown by establishing that the item involved was subject to the Defendant's dominion or control. The Defendant need not own the item in order to be in "possession" of it; as one can be in "possession" of an item that one does not own.

Dora complains in his eleventh ground that jury instruction D-12 and D-13 should have been granted. Proposed instruction D-12 stated:

Rebecca Dora is alleged to be an accomplice in this case and the testimony of an accomplice is to be considered with great care and caution and you may give it such weight and credit as you deem it is entitled.
Further, that the evidence of an accomplice should be weighted with great caution, jealously and distrust, and the jury may disbelieve such testimony altogether.

Proposed instruction D-13 defined an "accomplice." Both of these instructions were refused after the State objected to them. The trial court found that there was no proof or evidence that Rebecca and Terry Dora conspired to possess the cocaine.

Similarly, Dora argues that proposed instruction D-16 should have been allowed. D-16 stated:

The owner of the house at 1802 Washington Avenue in Columbus, Mississippi, Rebecca Dora and her long time live-in boyfriend, Willie Henley, were dealing in crack cocaine.
In order to save Rebecca Dora and Willie Henley from prosecution, Rebecca Dora and Alicia Dora are trying to put the possession of cocaine on Terry Dora.

Following the State's objection, the instruction was refused as an improper comment on the evidence by the court.

The constitution is not implicated by a jury instruction which encompasses state law. Generally, challenges to jury instructions may not form the basis for federal habeas relief.

*Gilmore v. Taylor*, 508 U.S. 333, 342-43, 113 S. Ct. 2112, 2118-19, 124 L. Ed. 2d 306 (1983).

A federal court may grant habeas relief only when the state court's jury instruction "by itself so

infected the entire trial that the resulting conviction violates due process," *Cupp v. Naughten*,

414 U.S. 141, 147, 94 S. Ct. 396, 400, 38 L. Ed. 2d 368 (1973), not merely that the charge is

"undesirable, erroneous, or even universally condemned." *Id.* at 146. Here, the court finds that

the jury charge was an accurate statement of the law and so informed the jury. There was no

error of state law or, more importantly, established federal law.

Jury instruction S-4 was an accurate statement of state law. Proposed instructions D-12,

D-13 and D-16 were properly denied by the trial court. On review, the State Supreme Court

ratified these decisions through its silence. The Petitioner has presented no basis to find that the

jury charge violated any due process concerns or that the State Court holding was unreasonable.

For these reasons, Grounds Six, Eleven and Thirteen are denied.

<u>Ground Seven: Discovery Violation</u>

Dora claims that the state was guilty of a discovery violation in connection with the

testimony of Rebecca Dora. Dora claims that the state failed to disclose, prior to trial, that

Rebecca, contrary to her earliest statements to the police, was going to testify that the drugs and

money found in the bathroom were Dora's drugs and money, not hers.

The United States Supreme Court has held that the Due Process Clause guaranteed by the

Fourteenth Amendment requires the prosecution to produce, upon request, evidence favorable to

the accused material to either guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct.

1194, 10 L. Ed. 2d 215 (1963). The prosecution's good faith or lack thereof is immaterial to the

inquiry. *Id.* The *Brady* standard applies when (1) the prosecution withholds evidence (2) that is

favorable to the defense because it is exculpatory, or because it is impeaching, and (3) the

evidence is material. *Kyles v. Whitley*, 514 U.S. 419, 432-34, 115 S. Ct. 1555, 1565-66, 131 L. Ed. 2d 490 (1995). Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383, 87 L. Ed. 2d 481 (1985); *DiLosa v. Cain*, 279 F.3d 259, 263 (5th Cir. 2002). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Kyles*, 514 U.S. at 434. A *Brady* violation will not rest upon the failure to disclose evidence that is neutral or inculpatory. *United States v. Nixon*, 881 F.2d 1305, 1308 (5th Cir. 1989). When a Petitioner fails to establish any element of *Brady*, the court need not inquire into the other components. *United States v. Runyan*, 290 F.3d 223, 245 (5th Cir. 2002).

In Dora's case, there was no statement by Rebecca that was withheld. Her prior statement to the police indicating that all of the drugs in the home belonged to her was disclosed and strategically used during trial. To the extent Dora argues that the prosecution should have informed him that Rebecca was going to recant her previous statement, his claim must fail. Rebecca's testimony at trial completely contradicted her earlier admission that the drugs belonged to her. Rather, at trial, Rebecca denied responsibility for the drugs and money that were found in the bathroom thus, implying that the drugs belonged to Dora. This statement does not fall within the rule announced in *Brady*.

*Brady* requires the production of exculpatory or favorable evidence. Rebecca's change in testimony can hardly be characterized as favorable to Dora. *Brady* does not require the prosecution to turn over evidence, such as Rebecca's trial testimony, that inculpates a defendant. Accordingly, there was no *Brady* violation.

Ground Eight: Suppression of the Evidence

Dora contends that the evidence seized at Rebecca Dora's house should have been suppressed. Dora believes that his arrest was illegal because he was not the owner of the home, no drugs were found on his person and Rebecca, after the arrest, initially claimed to be the owner of the drugs and cash found in the bathroom. This claim as stated by Dora is a non sequitur.

To the extent Dora is attempting to challenge the denial of his motions to suppress or exclude evidence, his claim must fail. *See Stone v. Powell*, 428 U.S. 465, 482, 96 S. Ct. 3037, 3046, 49 L. Ed. 2d 1067 (1976) ("where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. . ."); *Shisinday v. Quaterman*, 511 F.3d 514, 524-25 (5th Cir. 2007). The trial court held a lengthy pretrial hearing on all of Dora's motions. He may not relitigate those issues here.

If Dora is attempting to challenge the execution of the search warrant on the basis that he was a guest and not the owner of the home, this claim too fails. Dora has no standing to challenge the search upon property that he did not own. *See Rakas v. Illinois*, 439 U.S. 128, 99 S. Ct. 421, 425, 58 L. Ed. 2d 387 (1978). Standing is a personal right that cannot be asserted vicariously. *United States v Pierce*, 959 F.2d 1297, 1303 (5th Cir. 1992). In order to have standing under the Fourth Amendment to challenge a search, a defendant must show (1) an actual subjective expectation of privacy with respect to the place being searched or items being seized, and (2) that the expectation is one that society would recognize as reasonable. *United States v. Lee*, 898 F.2d 1034, 1037-38 (5th Cir. 1990).

Dora's argument, as a means to suppress evidence, contradicts the theme of his habeas

petition. Dora repeatedly argues that the home where the drugs were found was not his and that he was merely a visitor. In order to even have standing to assert a violation of the Fourth Amendment, Dora would have to show that he had an expectation of privacy in the home or bathroom. *See United States v. Vega*, 221 F.3d 789, 797-98 (5th Cir. 2000) (a guest can establish a privacy interest if he can show a long standing social custom that serves a valuable societal function). These arguments cannot coexist. In any event, Dora has not and cannot establish any privacy interest in Rebecca's home. There was no basis to suppress the evidence seized from the search of the home. The State Court's denial of these arguments was neither contrary to or an unreasonable application of federal law.

Ground Nine: Newly Discovered Evidence

Dora claims that he is entitled to relief on the basis of newly discovered evidence. The newly discovered evidence is Rebecca Dora's guilty plea to a drug possession charge three months after his trial. Dora, however fails to appreciate the law regarding possession. Possession may be joint among several defendants. *United States v. Ramos-Cardenas*, 524 F.3d 600, 605 (5th Cir. 2008). The fact that Dora and Rebecca may have been lawfully convicted for possessing the same drugs does not form the basis for federal habeas relief.

Ground Ten: Cumulative Effect

Dora claims that the cumulative effect of errors claimed in other grounds in his petition was to deprive him of a fair trial. Federal habeas relief is only available for cumulative errors that are of a constitutional dimension. *Coble v. Quaterman*, 496 F.3d 430, 440 (5th Cir. 2007). As extensively discussed *supra*, Dora has failed to establish an ineffective assistance claim under *Strickland*, any jurisdictional defect or evidentiary error resulting in an unfair trial. Thus, Dora has not identified any constitutional error that would justify federal habeas relief.

<u>Ground Twelve: Amended Indictment</u>

Finally Dora complains that the indictment in his case should not have been amended to include habitual offender status. He asserts that he is actually innocent of being an habitual offender because his second conviction "became final" on November 21, 2001. Whether or not the indictment can be amended is a matter of state law, not federal constitutional law. If the habitual offender statute was misapplied or misinterpreted in his case is again a matter of state law, not federal law.

Finally it does not appear that there was even a state law error. First Mississippi law allows for the amendment of indictments to include allegations under habitual offender statutes. Rule 7.09 Uniform Circuit and County Court Rules. Additionally Mississippi's courts have expressly held that there need not be two convictions existing at the time of the third crime, but that it is sufficient so long as there are two pre-existing convictions by the time of the third conviction. *Sims v State*, 775 So. 2d 1291 (Miss. Ct. App. 2000). The Mississippi Supreme Court has even upheld the imposition of habitual offender punishment on the remand of a case, where the second conviction was obtained during the appeal of an earlier conviction. *Willie v. State,* 876 So. 2d 278 (Miss. 2004). There simply is no merit to Dora's claim.

### *D. Conclusion*

The Grounds asserted by the Petitioner, neither singularly nor collectively, rise to a level worthy of habeas relief. From a review of the record, it appears that the Petitioner with the assistance of capable counsel was afforded a fair trial with a jury that returned a reasonable verdict based on competent evidence. Therefore, the Petitioner's claims have no merit and the petition shall be denied in all respects.

A final judgment shall issue in accordance with this opinion.

This the 18th day of January, 2011.

 /s/ Sharion Aycock
**U.S. DISTRICT JUDGE**